(Lorain Common Pleas, May 27, 1895.)

NATIONAL EXPRESS CO. v. HOUGH et al.

---

Right of principal to recover proceeds of orders fraudulently drawn by agent in payment of his individual debts, where identical money paid on such orders can be reached.

H., an agent of the express company, having a right to do so by virtue of his agency, drew orders on the company and remitted them to his creditors in payment of his individual debts. The orders were

received by the creditors and placed by them in the N. bank to their credit, and, through the bank's correspondent, were collected and the proceeds thereof passed into the bank's hands. Shortly after issuing such orders, H., being a defaulter, absconded and left a large amount of debts behind him. The express company instituted suit to enjoin the bank from paying and the creditors of H. from collecting the proceeds of such orders.

Held, H. having received no consideration for issuing such orders, and the creditors having parted with no consideration for them, the proceeds of said orders must be returned to the express company.

———

NYE, J.

In the case of the National Express Company against William E. Hough and others an action was brought by the plaintiff and injunction granted to restrain the defendants, Harris and Woodworth, from collecting and the National Bank from paying over certain money, that was collected upon an express order issued by Hough as the agent of The National Express Company at Flushing, Michigan.

The facts of this case are about these: The Natonal Express Company is a corporation, organized under the laws of the state of New York. William E. Hough was agent of this company at Flushing, Michigan, and had been for several years.

Minnie Harris held a mortgage against some property of his at Flushing, Michigan. Graham Harris is another defendant, and husband of Minnie. Both live here in Elyria. Mrs. Woodruff, who was related in some way to Hough, had placed in Hough's hands some years ago certain money to be loaned by him. And from time to time he had sent to her express orders in payment of certain amounts that he had either received for interest or in some other way, and from time to time he had sent to the Harrises certain amounts of money by express orders, in payment of what he owed to them, either as interest or principal.

On or about the 17th day of September, 1894, Hough absconded. He became a defaulter to the express company, and he went away leaving a large amount of debts behind him.

Just a few days prior to his going away he issued quite a number of express orders. The largest amounts being $50, which as I understand is the largest amount they can issue.

Of these he sent four, amounting to $200, to Mrs. Woodworth, who is the daughter of Mrs. Woodruff, as advancements upon the money that had been placed in his hands to be loaned and invested for Mrs. Woodruff. A few days before the 17th he also sent to Mr. Harris $509 of these express orders, in full payment of the mortgage held by Mrs. Harris.

These orders were received by the parties here. Mr. Harris, the husband of Minnie

Harris, placed them in the National Bank to his wife's credit, to be forwarded on as orders of that kind are or as any other papers are to the home office through the usual course of business, to be paid. Mrs. Woodworth placed in the National Bank her orders, and received credit for them. She received credit in her own name. These orders, however, did not belong to her, but to her mother, as I have already said, being sent on by Mr. Hough in payment of some money he had of hers. These orders were sent by the National Bank, through its correspondent. to New York to be collected and paid, and this bank through its correspondent has received credit for these orders. So that the money, the proceeds of these orders, is now held in the bank here for some one, and this suit is brought by injunction to restrain the bank from paying over the proceeds of those orders to Harris and Mrs. Woodworth, claiming that the money belongs to the plaintiff. The defendants (Mrs. Woodworth and Harrises) claim that it belongs to them: that these were negotiable instruments. Now, in the Woodworth case there is no proof that any money was paid to the agent at Flushing, Michigan, for these orders; he simply drew these orders upon the express company, and forwarded them on here to Mrs. Woodworth, and there is no claim made that there was any money paid to him there for these orders. On the part of the Harris orders the proof shows this state of facts: that Hough issued these orders, and part of them he sent on one day and later he sent on the balance of them. But before he sent them he was desirous of making a loan of a man by the name of Hugh Montgomery. Mr. Montgomery was here and testified, and I find in substance from his testimony about this state of facts, that Mr. Hough made an application to him for a loan of five or six hundred dollars, I do not remember the exact amount, and that Mr. Montgomery refused to make the loan, unless he could have the first mortgage upon this property. Mr. Hough, to assure him that he was to have the first mortgage upon this property, brought to him express orders sufficient as he claimed, to pay off the debt of Harris's, pay off the mortgage, with a letter directed to Harris,, stating that they were in full payment of his mortgage, and put them in an envelope. Hough either put them in in the presence of Montgomery or Montgomery put them in himself and sent them on here to Harris, and then Montgomery loaned this money, supposing that the Harris mortgage was paid off. Now, Montgomery is not a party to this action. The situation is this, as I understand it. Here an agent of the express company having a right to draw orders upon the express company, has drawn orders to the amount of $709 and sent them on to pay his debt. These orders, upon their face. are made payable to Harris and Woodworth, and Hough appears upon those orders as the agent of the company. He also appears as the remitter. He had a right as

1 have said to draw orders upon the express company by virtue of his agency.

We have in this case the identical money or proceeds of the identical money which was received on these orders. The question is, what the court shall do with this money.

I am clearly of the opinion that from the facts in this case that Mr. Hough received no consideration from any one for issuing those orders. The parties here have parted with no consideration whatever for them. Mrs. Woodworth stands in the same relation that she was before; she has parted with nothing. If Mr. Hough owed her, he owed her the debt that was due from him, not from the express company. If he owed Mrs. Harris, it was his debt, and to hold that an agent may draw a check or an order or a draft upon the money of his principal to pay his debt with, when you can reach the identical money, before it gets into the hands of any innocent person, would be to hold that one person may commit a fraud upon another and that there is no equitable relief.

Now, I think this money stands in the same relation precisely as it would if a book-keeper who had a right to draw a check upon his employer had drawn one on a bank account of his employer to pay his individual debt, and the check remained in the hands of the book-keeper's creditor, and then to hold that the proceeds of said check must be applied upon that debt, when you may reach the same money, would be an injustice.

I am of the opinion that the equities of the case would require that the money should be returned or paid to the employer. Mr. Hough committed a fraud when he issued these money orders without any consideration, and turned them over to pay his debt. The money remained right where he placed it. Nobody has parted with anything. Mrs. Woodworth has parted with nothing, Mr. Harris has parted with nothing. It is said this mortgage is paid and cancelled. The proof does show that one installment of this money was indorsed upon the note, but nothing has been done with the mortgage. The indorsement upon the note, if action should be brought upon it, undoubtedly could be explained, and it could be shown that nothing had been received. It seems to me this money should be turned over to the express company from which it originally came. And with that view of it there will be a decree for the plaintiff.

E. G. Johnson and Herrick & Hopkins, for Plaintiff.

Webber & Stroup, for Defendants.